UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PRIMO ORTHOPEDICS, LLC,

        **Plaintiff,**

**v.**                                  **Case No.   6:24-cv-619-ACC-DCI**

**HUGHSTON ORTHOPAEDICS, LLC,**

        **Defendant.**

## ORDER

This cause comes before the Court on the following motions:

1. Defendant Hughston Orthopaedics LLC's ("Tenant") Motion to Dismiss Count II of the Complaint (Doc. 13), to which Plaintiff Primo Orthopedics, LLC ("Landlord") responded in opposition (Doc. 17); and

2. Landlord's Motion for Summary Judgment (Doc. 15), to which Tenant responded in opposition (Doc. 19), and Landlord filed a reply (Doc. 28).

The Motions are fully briefed and ripe for review. For the reasons that follow, Tenant's Motion to Dismiss Count II of the Complaint will be granted, and Landlord's Motion for Summary Judgment will be granted in part, as to Count I.

## FACTS

This lawsuit involves a lease dispute between Landlord and Tenant. The Complaint was originally filed in the Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida on February 29, 2024 (Doc. 1-1), and was subsequently removed by Tenant to this Court on April 1, 2024, (Doc. 1). Landlord brings one count for breach of a lease agreement and a second count for civil theft. (Doc. 1-1).

The following facts are alleged in the Complaint and undisputed by the evidence submitted in support of Landlord's Motion for Summary Judgment. On January 10, 2022, Landlord and Tenant entered into a lease agreement wherein Tenant leased the premises located at Unit 4 of 8045 Spyglass Hill Road, Melbourne, Florida for a period of 84 months (the "Lease Agreement"). (Doc. 1-1 ¶ 7, Ex. A; Doc. 15 ¶ 1, Ex. A; Doc. 19 ¶ 1). Section 12 of the Lease Agreement capped permissible leasehold improvements at $150,000 ("Leasehold Improvements"). (Doc. 1-1- ¶ 8; Doc. 15 ¶ 2, Ex. A). Tenant was required to disclose to Landlord and obtain Landlord's written approval for all Leasehold Improvements, and Section 12(h) of the Lease Agreement required Tenant to reimburse Landlord for the cost of the improvements if Tenant terminated the Lease Agreement early.[1] (Doc. 1-1 ¶¶ 8–10, 16; Doc. 15 ¶¶ 2, 5; Doc. 19 ¶¶ 2, 5).

---

[1] Tenant disputes this, not because it disputes the language of the Lease Agreement providing for such reimbursement but because Tenant believes that other balances owed to it under a separate agreement absolved it of its obligations to pay this amount. The Court addresses this below.

Landlord initially approved and paid for $142,083 for Leasehold Improvements. (Doc. 1-1 ¶ 12; Doc. 15 ¶ 3; Doc. 19 ¶ 3). Despite approving only $142,083 in Leasehold Improvements, Tenant incurred $225,668 in Leasehold Improvements—well above the $150,000 budgeted amount. (Doc. 1-1 ¶¶ 11–13; Doc. 15 ¶ 3, n.2 and Ex. B). However, while Landlord alleges the exceeded budget as a breach of the Lease Agreement, Landlord does not seek to recover the amount Tenant incurred exceeding the budget in unapproved expenses nor does Landlord allege that it paid any more than the $142,083 of which it seeks reimbursement. Tenant does not address the additional amounts.

On October 18, 2023, Tenant terminated the Lease Agreement effective December 18, 2023, and the parties do not dispute that termination was proper. (Doc. 1-1 ¶ 14; Doc. 15 ¶ 4, Ex. C; Doc. 19 ¶ 4). Pursuant to Section 12(h) of the Lease Agreement, given Tenant's early termination of the Lease Agreement, Landlord sought reimbursement for the $108,243.44 remaining unpaid for the Leasehold Improvements.[2] (Doc. 1-1- ¶ 15; Doc. 15 ¶¶ 8, 5). This amount is calculated as follows: the $142,083 total approved Leasehold Improvement amount was being paid by Tenant monthly in the amount of $1,691.46 per month, and some of this had been paid as of the date of termination. (Doc. 1-1 ¶ 15; Doc. 15 ¶¶ 8, 5). There were 64 months remaining on the Lease Agreement at the time of the termination, and

---

[2] Tenant notes that it disputes Landlord's entitlement to this amount but not the balance itself. (Doc. 19 ¶ 8).

Landlord alleges that $108,243.44 is still owed. (Doc. 1-1 ¶ 15; Doc. 15 ¶ 7). Tenant has failed to pay this amount to Landlord, and Landlord brought a claim against Tenant for breach of the Lease Agreement seeking this amount (Count I). (Doc. 1-1 ¶ 17; Doc. 15 ¶¶ 8, 5).

Landlord also brings a claim for civil theft against Tenant (Count II) relating to the removal of medical and other equipment and supplies that Tenant brought onto the leased premises for operating the medical clinic. (Doc. 1-1). On November 8 and 30, 2023, relying on Section 21 of the Lease Agreement, Landlord formally notified Tenant that it was imposing a lien over all goods, wares, fixtures, and equipment on the premises due to Tenant's failure to reimburse Landlord for the Leasehold Improvements. (Doc. 1-1 ¶ 18; Doc. 15 ¶ 9; Doc. 19 ¶ 9). Section 21 of the Lease Agreement provides:

21.    **CONTRACTUAL LANDLORD'S LIEN.** Landlord shall have, at all times, a valid security interest to secure payment of all Rent, Additional Rent and other sums of money becoming due hereunder from Tenant, and to secure payment of any damages or loss which Landlord may suffer by reason of the breach by Tenant of any covenant, agreement or condition contained herein, upon all goods, wares, equipment, fixtures, furniture, improvements and other personal property of Tenant presently or which may hereinafter be situated in the Premises, and all proceeds therefrom, and such property shall not be removedtherefrom without the consent of Landlord until all arrearages in Rent and Additional Rent as well as any and all other sums of money then due to Landlord hereunder shall first have been paid and discharged and all of the covenants, agreements, and conditions hereof have been fully complied with and performed by Tenant. In consideration of this Lease, upon the occurrence of an event of default by Tenant, Landlord may,in addition to any other remedies provided herein, enter upon the Premises and take possession of any and all goods, wares, equipment, fixtures, furniture, improvements, and other personal property of Tenant situated on or in the Premises, without liability for trespass or conversion, and sell the same at public or private sale, with or without having such property at the sale, after giving Tenant reasonable notice of the time and place of any public sale or of the time after which any private sale is to be made, at which sale Landlord or its assigns may purchase unless otherwise prohibited by law. Unless otherwise provided by law, and without intending to exclude any other manner of giving Tenant reasonable notice, the requirement of reasonable notice shall be met if such notice is given in the manner prescribed in Item 36 dealing with "Notices" in this Lease at least ten (I 0) days before the time of sale. The proceeds from any such disposition, less any and all expenses connected with the taking of possession, holding and selling of the property (including reasonable attorney's fees and other expenses), shall be applied as a credit against the indebtedness secured by the security interest granted in this Item 21 . Any surplus shall be paid to Tenant or as otherwise required by law, and Tenant shall pay any deficiencies forthwith. Upon request by Landlord,

Tenant agrees to execute and deliver to Landlord a financing statement in form sufficient to perfect the security interest of Landlord in the aforementioned property and proceeds thereof under the provisions of the Uniform Commercial Code then in force in the State of Florida.

(Doc. 1-1, Ex. A Lease Agreement, § 21).

Despite Landlord's notice of its claim of lien over the goods and equipment located on the leased premises, on December 11 and 12, 2023 (prior to the lease termination date of December 18, 2023), Tenant removed from the leased premises the following equipment of which Tenant had originally owned or rented: an X-ray machine, various computers and laptops, blood pressure machine, copy machine, wheelchair, desks, chairs, furniture, exam tables, security equipment, cleaning equipment, and other medical equipment and supplies. (Doc. 1-1 ¶ 20; Doc. 15 ¶ 11; Doc. 19 ¶¶ 11, 36). Thereafter, Landlord sent Tenant the statutory demand for a civil theft claim pursuant to § 772.11(1), Florida Statutes, seeking treble damages from Tenant. (Doc. 1-1 ¶ 22). Tenant failed to comply with the demand. (*Id*. ¶ 23).

## TENANT'S MOTION TO DISMISS

### I.    Legal Standard

For purposes of deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). "Generally, under the Federal Rules of Civil Procedure, a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). However, the plaintiff's complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Specific facts that are not necessary to state a claim for relief do not need to be included in a complaint. *Id.* Legal conclusions or a recitation of the elements of a cause of action are insufficient to satisfy a plaintiff's burden to prove he is entitled to relief. *Id.* at 555. A facially plausible claim must plead facts that give rise to a reasonable inference that a defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Thus, the Court is not required to accept as true a legal conclusion merely because it is labeled a "factual allegation" in the complaint; it must also meet the threshold inquiry of facial plausibility. *Id.*

### II.    Landlord's Claim for Civil Theft

Tenant contends that Landlord's claim for civil theft is due to be dismissed for failure to state a claim because Landlord lacked a possessory or ownership interest in Tenant's equipment and other property. Specifically, Tenant contends that Landlord failed to foreclose on its Landlord's lien in accordance with Florida law, which is the only mechanism available to Landlord to obtain the value of the liened property in exchange for the owed amount for the Leasehold Improvements. (Doc. 13 at 5–8, and 11). Tenant maintains that it cannot be liable for civil theft for taking possession of its own equipment and other supplies, regardless of the terms of the contractual landlord's lien provision in Section 21 of the Lease Agreement cited above. (*Id*.). Tenant also cites to Section 14 of the Lease Agreement, which provides, in part, that all of Tenant's "furniture, movable trade fixtures, and equipment may be removed by Tenant at the expiration of the Lease." (*Id*. at 3).

In response, Landlord argues that there is a distinction between a contractual landlord's lien and a statutory landlord's lien in Florida, arguing that Landlord's lien was entirely contractual in nature and created solely by Section 21 in the Lease Agreement. Landlord does not cite any cases to support this distinction. According to Landlord, this provision entitled it to a possessory / ownership interest in Tenant's property after Landlord sent correspondence advising Tenant that it was imposing a lien and taking possession of the goods.

Under Florida law, a defendant commits civil theft when it "(1) knowingly (2) obtained or used, or endeavored to obtain or use, [a plaintiff's] property with (3)

- 7 -

'felonious intent' (4) either temporarily or permanently to (a) deprive [the plaintiff] of its right to or a benefit from the property or (b) appropriate the property to [the defendant's] own use or to the use of any person not entitled to the property." *Epoch Int'l Partners, LLP v. Bigfoot Inc*., 587 F. Supp. 3d 1214, 1220–21 (S.D. Fla. 2022). To simplify, a civil theft claim requires proof of a conversion plus criminal intent. *Bailey v. Covington*, 317 So. 3d 1223, 1227 (Fla. 3d DCA 2021) (*citing Heldenmuth v. Groll*, 128 So. 3d 895, 896 (Fla. 4th DCA 2013).

Given the language of the Lease Agreement and applicable Florida law, Landlord has not alleged that Tenant's equipment and other supplies still on the leased premises during the lease term was property of Landlord as opposed to Tenant's property in which Landlord had a security or lien interest. Landlord conflates a lien and security interest with an actual ownership interest. A civil theft claim requires that the property being converted be the property of the plaintiff. *Epoch*, 587 F. Supp. at 1220–21. Further, given Tenant's reasonable claim to the property, the Complaint also does not allege felonious intent. Most importantly, however, is that the civil theft claim is improper because it is merely a breach of contract claim and nothing more.

Addressing the ownership issue first, Tenant removed its own property a week before the actual expiration of the Lease Agreement at a time when Tenant had possession of the property and leased premises. Even though Landlord sent warnings that it was unilaterally asserting its lien rights, Tenant's reliance on provisions of the

contract (for example, Section 14 which permitted Tennant to remove its equipment), Tenant's interpretation of Section 21 of the Lease Agreement as granting Landlord only a security interest in Tenant's property, and Tenant's understanding of Florida lien law as confirmed by cases cited by Tenant in its brief, all support Tenant's continued ownership in the personal property and reasonable claim to possession and ownership.

Section 21 of the Lease Agreement provides that Landlord has a "security interest" in Tenant's equipment and supplies. Section 21 further provides, in relevant part, that Tenant's "property shall not be removed therefrom without the consent of Landlord until all arrearages in Rent and Additional Rent as well as any and all other sums of money then due to Landlord hereunder shall first have been paid and discharged." Under this provision, Tenant may not remove the property when it is indebted to Landlord under the Lease Agreement. Tenant's removal of the property, however, constitutes a breach of the Lease Agreement, but it does not grant Landlord possession or ownership in Tenant's property.[3]

---

[3] The Court need not determine the validity of the language in this provision that purports to permit Landlord to engage in self-help by entering the premises and take possession of Tenant's personal property to sell at a sale. These facts are not alleged to have happened in this case. To the contrary, Tenant (not Landlord) exercised control over its own personal property during the lease period. Landlord does not allege that it entered the premises and took possession of the goods to execute a sale. Moreover, Landlord does not allege that it provided the requisite notice for an organized sale. The sole issue is Landlord's claim to possession or ownership and Tenant's competing claim of possession or ownership, and the self-help language does not resolve that question.

Moreover, Landlord failed to take appropriate steps under Florida law to foreclose on its lien. A landlord's lien confers to the landlord priority over other liens on the tenant's personal property that attach after the property is brought on the leased premises. *Sachs v. Curry-Thomas Hardware, Inc*., 464 So. 2d 597 (Fla. 1st DCA 1985). Florida law is clear, however, that a landlord's lien does not convey to the landlord the right of ownership or possession, and Landlord is not entitled to utilize a claim of lien as a form of self-help to exclude Tenant from its own possessions prior to the requisite judicial proceedings. "[T]he establishment of [] a [landlord's] lien against property does not confer a right to possess the property against the owner." *Seymour v. Adams*, 638 So. 2d 1044, 1047 (Fla. 5th DCA 1994). "Compliance with the distress statute is the means by which a statutory landlord's lien is enforced." *Id*. It is undisputed here that Landlord did not seek to comply with the distress statute but only sent threatening correspondence to Tenant claiming ownership.

Landlord urges the Court to make a distinction between the case law regarding statutory landlord's liens and the "contractual landlord's lien" included in Section 21. However, Landlord has failed to cite to a case establishing that Landlord need not follow the distress provisions of Chapter 83, Florida Statutes, simply because the Lease Agreement contained language establishing a "contractual landlord's lien." Instead, Landlord appears to be urging the Court to re-adopt the common law distress procedure, which has clearly been replaced. *See Seymour*, 638 So. 2d at 1047 ("The

statutory distress procedure has supplanted the common law distress procedure, which gave the landlord the right to seize the personalty and hold it until it was redeemed by payment of the rent claim."); *Van Hoose v. Robbins*, 165 So. 2d 209, 212 (Fla. 2d DCA 1964) (holding that the common law remedy for distress that included self-help has been superseded by the statutory remedy). If landlords could simply include this contractual lien language in their lease agreements to thwart the requirements of Chapter 83, Florida Statutes, then the clear requirements of the statute would be undermined on a regular basis as such contractual landlord lien provisions are commonplace in lease agreements. Landlord has not provided any case law to support this. In the absence of any legal support for Landlord's position, the Court finds that Landlord has neither alleged that the property is exclusively Landlord's nor that Tenant's belief regarding its right to possess its property was felonious.

More importantly, even if Landlord had properly alleged ownership and felonious intent, Landlord's civil theft claim still fails because it is based entirely on the parties' contractual agreement. "Where the property at issue is also the subject of a contract between the parties, a civil theft claim requires additional proof of 'an intricate sophisticated scheme of deceit and theft.'" *Epoch*, 587 F. Supp. 3d at 1221. "[T]he civil theft . . . must go beyond, and be independent from, a failure to comply with the terms of the contract." *Id*. It is well-established that a civil theft claim is improper where it is not independent from the terms of the contract. *See Island*

*Travel & Tours, Ltd., Co. v. MYR Independent, Inc.*, 300 So. 3d 1236 (Fla. 3d DCA 2020) ("Civil theft must go beyond, and be independent from, a failure to comply with the terms of a contract."); *Walker v. Figarola*, 59 So. 3d 188, 190 (Fla. 3d DCA 2011) (reasoning that "[w]here damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort."); *Leisure Founders, Inc. v. CUC Int'l, Inc.*, 833 F. Supp. 1562, 1574 (S.D. Fla. 1993) ("Plaintiffs allege the conversion of funds to be exactly coextensive with the nonperformance of an agreement between the parties. As such, the claim in Count VII for civil theft under Florida law is spurious and must be DISMISSED.").

Landlord's opposition to Tenant's Motion to Dismiss relies entirely on the language of the contract, further reinforcing that its civil theft claim is not appropriate. (Doc. 17 at 1) (reasoning that "Tenant also falsely claims it had the right to remove the subject property from the Premises, but the contract unequivocally says the opposite."); (*Id*. at 5) (stating that "Landlord's possessory rights arise from Paragraph 21 of the Lease Agreement" and "*[t]he Contract* further expressly precluded Tenant from removing any items from the Premises until arrearages of been paid.") (emphasis added). Landlord alleges only that Tenant breached the Lease Agreement by removing its own property when the Lease Agreement required the property not be removed. This is simply a breach of the contract. Similarly, the rent Tenant is alleged to owe to Landlord arises from Tenant's breach of the Lease

- 12 -

Agreement, and Landlord's claim to ownership or possession of Tenant's property also arises out of Section 21 of the Lease Agreement.[4]

For these reasons, Landlord's claim for civil theft is due to be dismissed. Landlord has not alleged that it owned the personal property at issue which is, in turn, necessary to establish that Tenant acted with "felonious intent" to deprive Landlord of its right to such property. Even had Landlord alleged ownership and the requisite felonious intent, Landlord's claim for civil theft is improper as it arises solely out of the performance and/or non-performance under the parties' Lease Agreement and is thus barred under Florida law.

## **LANDLORD'S MOTION FOR SUMMARY JUDGMENT**

### I.    **Additional Facts Submitted on Summary Judgment**

In response to Landlord's Motion for Summary Judgment, Tenant provides additional facts relating to the souring of a relationship between related parties regarding the actual operation of the medical clinic that culminated in a lawsuit currently pending in Georgia State Court. (*See* Complaint, Doc. 21-1). Years before Landlord and Tenant entered into the Lease Agreement, in January 2017, Dr. Pasquale Reino ("Dr. Reino"), Pasquale Reino, D.O. (the "Reino Entity"), and The

---

[4]    Additionally, it is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft. *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008). The "property" of Landlord that is truly at issue is the unpaid amounts for the Leasehold Improvements. The Lease Agreement, and Florida law, provide Landlord with certain secured rights for protecting Landlord in the instance of nonpayment; however, these rights do not include an immediate transfer of possession upon Landlord's unilateral declaration.

Hughston Clinic, P.C. ("Hughston Clinic") entered into a Professional Services Agreement (the "PSA"), which would govern the independent contractor relationship among those parties wherein Dr. Reino and the Reino Entity would perform certain medical services at facilities of the Hughston Clinic with the Hughston Clinic performing the administration work. (Doc. 19 ¶¶ 17–18; Doc. 20-1, §§ 1.1 and 1.2). Dr. Reino is the sole member of Landlord, which is an LLC. (Doc. 18-1; Doc. 14). Though the entities are related to one another, neither Landlord nor Tenant is technically a party to the PSA.[5]

Pursuant to the PSA, Dr. Reino operated his original clinic for several years in Poinciana, Florida. (Doc. 19 ¶ 18). The parties did not provide any information relating to the lease arrangement for the Poinciana location, such as the identity of the parties to the lease agreement, but Tenant alleges that "Hughston" (presumably one of the Hughston-related entities) paid all rent-related expenses for the Poinciana location initially, and then sought reimbursement from Dr. Reino for those expenses. (*Id*. ¶ 19). In 2021, Dr. Reino wished to move to Melbourne, Florida, and the parties agreed to re-locate the medical office there and resume their arrangement. (*Id*. ¶ 20). Dr. Reino, through the entity that is Landlord, purchased the Melbourne, Florida office space and executed the Lease Agreement with Tenant. (*Id*. ¶ 22).

---

[5] Interestingly, Tenant claims the amounts owed to Hughston Clinic under the PSA should offset the outstanding amounts it owes under the Lease Agreement in this lawsuit, but Tenant does not identify the Hughston Clinic as a party having any interest in this action. (*See* Doc. 12 ¶ 3).

One of the permissible grounds for terminating the Lease Agreement at issue in this case is that Tenant can terminate if Dr. Reino decides to terminate the PSA, which PSA termination occurred on October 2, 2023. (*Id*. ¶ 28). Thereafter, Tenant exercised its option to terminate the Lease Agreement. (*Id*.). Though Tenant is not even a party to the PSA, Tenant claims that Landlord owes it more than $150,000 under the PSA "for expenses paid by Hughston for the clinic that Dr. Reino is contractually obligated to pay." (*Id*. ¶ 30). Due to this owed balance, the Hughston Clinic, HMMG, LLC, Hughston Orthopaedics, LLC (Tenant in this action), and Hughston Orthopaedic Southeast, P.C. filed a lawsuit against the Reino Entity and Dr. Reino in Georgia State Court for breach of the PSA and alternative state law claims to recover the amounts owed. (Doc. 21-1). Tenant claims that, under the PSA, Dr. Reino is obligated to reimburse Tenant for the rent it currently owes to Landlord. Landlord is not a party to the Georgia State Court action.

## II.    Legal Standard

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must satisfy this initial burden by "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Norfolk S. Ry. Co. v. Groves*, 586 F.3d 1273, 1277 (11th Cir. 2009) (quoting *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986)). In response, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 256 (1986) (citation omitted). The movant is entitled to summary judgment where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. In deciding whether to grant summary judgment, the Court resolves all ambiguities and draws all permissible factual inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Shotz v. City of Plantation, Fla*., 344 F.3d 1161, 1164 (11th Cir. 2003) (citation omitted).

## III.    Summary Judgment Analysis

Tenant does not dispute the amount outstanding for Leasehold Improvements owed to Landlord under the Lease Agreement due to Tenant's early termination of the Lease Agreement. Instead, Tenant disputes Landlord's entitlement to these amounts arguing that the PSA and Lease Agreement are considered interrelated or mutually dependent contracts such that Dr. Reino and the Reino Entity's breach of the PSA is a default and/or a defense available to Tenant under the Lease Agreement. (Doc. 19). Tenant does not believe it should have to pay amounts to Landlord when Dr. Reino and the Reino Entity owe a greater amount to Tenant's related entities under the separate PSA. (*Id*. at 11–14). In response, Landlord emphasizes that these

- 16 -

agreements involve different parties and were not executed together. (Doc. 28). Additionally, Landlord relies on the plain language of the Lease Agreement that prohibits treating the two agreements as dependent on one another.

The Court must determine whether the PSA and the Lease Agreement are legally interrelated such that Dr. Reino and the Reino Entity's breach of the PSA may, if proven, absolve Tenant of its responsibilities under the Lease Agreement. This question depends on whether the agreements involve dependent or independent covenants. Whether contractual obligations under separate, related agreements are dependent or independent covenants is an issue of law that turns on the proper interpretation of the contracts. *Richland Towers, Inc. v. Denton*, 139 So. 3d 318, 321 (Fla. 2d DCA 2014); *Murphy v. Chitty*, 739 So. 2d 697, 698 (Fla. 5th DCA 1999) ("The question whether contractual provisions are dependent or independent is generally determined by the intent of the parties based on a reading of their entire contract."). "Documents executed 'concurrently, in the course of one transaction concerning the same subject matter . . . must be read and construed together.'" *Murphy*, 739 So. 2d at 698. Where possible, the contract must be construed in accordance with its plain language. *Denton*, 139 So. 3d at 321.

In this case, the Lease Agreement and the PSA were not executed concurrently or even around the same time. The two agreements do not incorporate each other such that they can be found to be mutually dependent based on an express reference. The PSA is only referenced in the Lease Agreement one time, in Section

- 17 -

2, which permits Tenant to terminate the Lease Agreement early in the event the PSA is terminated. This single reference is insufficient to establish the agreements as mutually dependent or to establish a clear intent that they be considered dependent. *See e.g.*, *De Leon v. Bank of Am., N.A. (USA)*, No. 6:09-cv-1251, 2009 WL 3822392, at *3 (M.D. Fla. Nov. 16, 2009) (even though Billing Statements referred to the other agreement at issue, "[n]owhere in the Agreement does it indicate that Billing Statements comprise part of the Agreement" and, therefore, finding the Billing Statement was not a part of the parties' contractual relationship). The parties could have, but did not, include a provision incorporating the PSA. Further, a breach of the PSA is not listed as a default under the Lease Agreement. There is no language suggesting an intent to have the agreement obligations run mutually dependently. *Gilbert & Caddy, P.A. v. JP Morgan Chase Bank, N.A.*, 193 F. Supp. 3d 1294, 1307 (S.D. Fla. 2016) (reasoning that where plaintiff failed to cite to a specific covenant in one agreement allegedly breached that would relieve plaintiff of its obligations under a separate provision, plaintiff failed to establish a breach of "a mutually dependent covenant of the Agreements."). In cases where courts have  found the agreements to be mutually dependent, the agreements usually included express language suggesting such intent. *See Murphy*, 739 So. 2d at 698 (one contract stated that one party could not enforce the noncompete if there are defaults under the other agreements); *Toyota Tsusho America, Inc. v. Crittenden*, 732 So. 2d 472 (Fla. 5th DCA 1999) (finding that consulting agreement was an "integral part" of parties'

settlement agreement, which agreement provided that "a default on any one agreement constituted a default on all of the other agreements").

The intent of the parties is never clearer than in Section 30 of the Lease Agreement entitled "Rent a Separate Covenant." Section 30 makes clear that "Tenant shall not for any reason withhold or reduce Tenant's required payments of Rent, Additional Rent, and other charges provided in the Lease." This provision further states that it is "expressly understood and agreed contractually by the parties that the payment of Rent and Additional Rent is a contractual covenant by Tenant that is independent of the other covenants of the parties under this Lease." This provision makes clear that Tenant's rent obligation is a separate, independent covenant not tethered to the PSA. The Court need not, and cannot, look beyond this clear expression of intent in the Lease Agreement. *Denton*, 139 So. 3d at 321 (reasoning that courts must construe intent from the plain language of the agreements wherever possible).

Additionally, the Lease Agreement and the PSA lack other characteristics typically found persuasive in the case law cited by Tenant regarding treating the agreements as mutually dependent on one another. For example, the PSA was executed five years before the Lease Agreement, not contemporaneously. The agreements do not incorporate each other. The parties to the agreements are not the same parties. Dr. Reino and the Reino Entity are alleged to owe the Hughston Clinic amounts under the PSA, but Tenant has not provided any legal support for its

contention that Landlord owes Tenant those amounts as neither Landlord nor Tenant are parties to the PSA. The Court cannot conflate the contractual responsibilities of separate, distinct entities.

Tenant relies on Tenant's own assertion that the Lease Agreement would not have been entered into but for the existence of the PSA. This may be true, but it is not a legally sufficient defense to Tenant's default under the Lease Agreement given the above reasons, primarily, that the Court must construe the plain and unambiguous language of the Lease Agreement to mean what it says: that Tenant's rent obligations are an independent covenant, and Tenant has no right to withhold or reduce its rent obligations.

Accordingly, Landlord is entitled to summary judgment on its breach of contract claim seeking $108,243.44 for the Leasehold Improvements. It is undisputed that the Lease Agreement was a valid agreement between the parties. It is further undisputed that, when Tenant terminated the Lease Agreement, the remaining unpaid amount for Leasehold Improvements was owed to Landlord and required to be paid by Tenant. Tenant's failure to pay the amount constitutes a breach of the Lease Agreement. Tenant may seek as a setoff or otherwise seek to recover the amounts it believes Dr. Reino and the Reino Entity owe to the Hughston Clinic under the PSA in its already pending, separate lawsuit regarding that agreement.

Finally, Landlord's Motion for Summary Judgment as to Count II for Civil Theft will be denied as moot, as the Court granted Tenant's Motion to Dismiss this count.

Based on the foregoing, it is ordered as follows:

1. Defendant Hughston Orthopaedics LLC's Motion to Dismiss Count II of the Complaint is **GRANTED**. Count II of the Complaint is **DISMISSED**.

2. Plaintiff Primo Orthopedics, LLC's Motion for Summary Judgment (Doc. 15) is **GRANTED in part and DENIED in part**. The Motion is **GRANTED** as to Count I for Breach of Contract and **DENIED** as moot as to Count II for Civil Theft, which claim has been dismissed.

3. The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff Primo Orthopedics, LLC and against Defendant Hughston Orthopaedics LLC on Count I for Breach of Contract in the amount of $108,243.44, and Plaintiff is entitled to recover its costs of this action.

4. The Clerk is **DIRECTED** to close this file.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on June 6, 2024.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record